AARON B. CHAPMAN *vs.* INHABITANTS OF LIMERICK.

York.    Opinion January 8, 1878.

*Towns.    Authority to raise money.    Bounties.    Stat.* 1865, *c.* 298, § 6.

To exercise authority conferred upon a town by the legislature, the action of the town must, in point of time, succeed the date of the authority.

Before a town can take such action, a meeting, called for the purpose, is essential, followed by a vote expressing its will so to do.

Under an article, in a warrant to raise money, for the purpose of filling the town's quota, a tax was assessed to the plaintiff, among others of the inhabitants, in 1864, and afterwards collected. The statute of 1865, c. 298, § 6, confers authority upon towns to pay bounties to volunteers, and pay persons where they have advanced the bounty. *Held,* that § 6 was prospective only; that it granted power to the town to act thereafter, but did not ratify previous action.

ON REPORT.

ASSUMPSIT, for money had and received, to recover money assessed upon and collected of the plaintiff by the assessors and collector of taxes of the town of Limerick by virtue of a special tax. The case as presented to the law court is stated by Kent, J., in the opinion in 56 Maine, 390.

The selectmen called a town meeting to be held October 3, 1864, to act upon the following articles:

I. "To see what sum of money, if any, the town will vote to raise to be appropriated for the purpose of filling the town's quota under the present drafts.

II. "To see what method the town will adopt to raise said money, if voted."

At an adjourned meeting under the above call, held October 22, Voted, "To ratify the expenditures of H. H. Brown and I. S. Libbey in filling our quota of men.

Voted, "That the selectmen be instructed to assess by special tax $10,500, and collect the same in sixty days.

Voted, "That the selectmen be directed to furnish to each subscriber to the fund in filling the quota an order to the amount of subscription paid in.

Voted, "That the selectmen be directed to use the first money paid in, by paying the notes which have been used in the recruiting fund."

Libbey's account makes the defendant town debtor to him for various sums paid recruits, and a small sum to balance the account paid to A. A. Libbey, $8,525, and credits the town by sums received from Mitchell, Brown and Doughty, $8,525.

Brown's account charges himself with sums received in cash and note, $6,894, and credits himself by sums paid out to volunteers and expenses to balance that amount. There were minutes indicating a payment, by some one, of $525 to each of five volunteers, at five per cent discount, in state orders, and showing his personal expenses to Portland and Augusta of $28.75.

Other facts are stated in the opinion.

*E. B. Smith & C. E. Clifford,* for the plaintiff.

*H. H. Burbank, L. S. Moore & I. T. Drew,* for the defendants.

VIRGIN, J. At a meeting held in October, 1864, the defendants, under appropriate articles in the warrant, " voted that the selectmen be instructed to assess by special tax the sum of $10,-500, and collect the same in sixty days." This sum, together with a legal sum as overlay, was soon afterwards duly assessed. The plaintiff declining to pay his tax, the collector, under a warrant from the assessors, duly distrained and sold his oxen ; from the proceeds deducted the tax, which he paid over to the town treasurer, and restored the balance to the plaintiff, with a written account of the sale and charges. In the following June, the plaintiff brought this action to recover the money thus received by the town.

The action comes forward on report ; the court to exercise jury powers as to the facts, and render such a decision as the law, upon so much of the evidence as is legally admissible, requires.

The report is very meagre in relation to the quota under the call of July, 1864. It is silent as to number and vague as to manner of filling it, if it was ever filled. It seems, however, that a fund was raised by the voluntary subscription of somebody, whom, how many or how much, does not appear. Whether the subscription was made at the suggestion, even, of the municipal officers ; whether the fund was thus raised in behalf of the town

without previous authority ; or whether it was intended as a gift, no subscriber or other person has vouchsafed to testify, and neither can we glean these facts from the report. This subject matter must of necessity be susceptible of full proof. However, certain money, it seems, which came from individuals, was placed in the hands of I. S. Libbey and H. H. Brown. All we are permitted to know further comes from their unexplained accounts, containing simple items of debt and credit and made a part of the report.

It nowhere appears that Libbey or Brown was any officer or agent of the town, or was employed by any officer of the town. As they expended the fund spoken of, we presume they were agents of the subscribers thereto.

Without any "distinct article" authorizing the action, the town, on October 22, passed the sixth and seventh votes, thereby directing the selectmen " to furnish to each subscriber to the fund an order to the amount of his subscription paid in ; " and to " use the first money paid in in paying the notes which have been used in the recruiting fund."

The counsel for the defendants concede that, the town had no right, at the time these votes were passed, to raise and appropriate money in the manner and for the purposes indicated ; but contend that the Stat. 1865, c. 298, validated the unauthorized acts.

Section one " made valid " five different species of the " past acts of towns," viz : " offering ; " " paying ; " " agreeing to pay ; " " raising and providing means to pay bounties to " volunteers, etc. ; and " all notes and town orders given by the municipal officers, in pursuance of a previous vote, for the benefit of volunteers." It is obvious that the sum of money voted October 22 was not raised for any of the purposes enumerated in section one.

There is no pretence that this case comes within any of the provisions of §§ 2, 3, 4 and 5. But it is contended that, c. 298 " explicitly authorized the refunding of money which had been advanced as bounty by persons or associations to volunteers ; " and that "the money raised by the defendant town was appropriated to pay money which had been so advanced." Reference

must be had to § 6, which provides: "Authority is hereby conferred upon towns to offer, pay and agree to pay bounties to volunteers, . . and to assume and pay to persons or associations, where they have advanced the bounty, or have by private subscription given as bounty to such volunteer." Now taking it for granted that the fund in question was "advanced" as bounty by the subscribers or given as such, it appears to us equally obvious that the case does not come within the provisions of this section. The terms of § 6 do not, like those of §§ 1, 2, 4 and 5, purport to "make valid the past acts" therein enumerated; but simply to confer power upon the towns to do the acts specified. Such authority had not been given by any previous statute, and therefore had never before existed. The provision was prospective in its nature. It was in no sense a ratification, but a grant of power to act. Towns can act only in their corporate capacity, when empowered. To exercise the "authority conferred," the action of the town must, in point of time, succeed the date of the authority. Before the town could take such action, a meeting called for the purpose would be essential, followed by a vote expressing its will so to do.

This view being fatal to the defendants, we have no occasion to decide the other points raised in the case.

The action being against the town for money had and received, the plaintiff can recover only the sum which the town received, with interest.

*Defendants defaulted*
*for $51.80 and int.*
*from date of writ.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and PETERS, JJ., concurred.